UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
HALIL DEMIRTAS,

                        Plaintiff,          **REPORT AND RECOMMENDATION**

    -against-                     24-CV-4960 (NRM)(SIL)

846 GAS CORP. and SHMUEL YAKOBOWICZ
a/k/a SAMUEL YAKOBOWICZ a/k/a SAMUEL
JACOBY,

                        Defendants.
-----------------------------------------------------------------X

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this wage and hour action, on referral from the Honorable Nina R. Morrison for Report and Recommendation, is Plaintiff Halil Demirtas's ("Plaintiff" or "Demirtas") motion for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* Docket Entry ("DE") [9]. By way of a Complaint dated July 17, 2024, Plaintiff commenced this action against Defendants 846 Gas Corp. ("846 Gas") and Shmuel Yakobowicz a/k/a Samuel Yakobowicz a/k/a Samuel Jacoby ("Yakobowicz," and together, "Defendants") alleging wage and hour violations pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). DE [1]. For the reasons set forth herein, the Court respectfully recommends that Plaintiff's motion be granted and that a default judgment be entered against Defendants, jointly and severally, in the amount of $24,993.48.

1

I.    **BACKGROUND**

A.    **Facts**

Unless stated otherwise, the following facts are taken from the Complaint ("Compl."), DE [1], and are accepted as true for purposes of the instant motion.  846 Gas owns and operates a Delta gas station and has a principal place of business at 846 Main Street, Farmingdale, New York.  Compl. ¶¶ 11-12.  846 Gas has employees engaged in commerce or in the production of goods and services for commerce.  *Id.* at ¶ 13.  It also has "employees who handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce."  *Id.* at ¶¶ 14, 56.  846 Gas's gross sales exceeded $500,000 during each year of Plaintiff's employment.  *Id.* at ¶ 15.

At all relevant times, Yakobowicz was an owner, officer, director, shareholder, and/or managing agent of 846 Gas.  *Id.* at ¶ 19.  He participated in running the daily operations, as well as in the management and supervision of 846 Gas and its employees.  *Id.* at ¶¶ 20-21.  Yakobowicz exercised control over 846 Gas, including determining employee salaries, making hiring decisions, and acting on behalf of and in the interest of 846 Gas in devising, directing, implementing, and supervising 846 Gas's wage and hour practices.  *Id.* at ¶ 22.  Specifically, Yakobowicz participated in multiple decisions and supervisory roles with respect to Plaintiff, including the decision to hire him, the nature and supervision of Plaintiff's job duties, the manner and amount that Plaintiff was paid, and ensuring that Plaintiff was paid properly.  *Id.* at ¶¶ 24-31.

From October 16, 2023 until July 1, 2024, Demirtas worked for Defendants as a gas station attendant, which required that he pump gas and operate the cash register. *Id.* at ¶¶ 36-38; Declaration of Halil Demirtas ("Demirtas Decl."), DE [9-6], at ¶¶ 12-13.[1] Plaintiff was not required to punch in or out of his daily shifts and Defendants did not keep or maintain accurate time records for the shifts that he worked. Compl. ¶¶ 39-40. From October 16, 2023 until December 31, 2023, Defendants paid Demirtas $17.00 per hour, and from January 1, 2024 until April 13, 2024, Defendants paid him $18.00 per hour. Demirtas Decl. ¶¶ 23-24.

From October 16, 2023 until April 13, 2024,[2] Plaintiff worked six days per week from 6:00 p.m. until 6:00 a.m. without uninterrupted breaks, for a total of 72 hours per week. Compl. ¶¶ 41-43. During this time, Defendants paid Demirtas a "straight-time," hourly rate of pay, with 36 hours of work being paid via check from 846 Gas, and another 36 hours of work being paid via a check from non-party 365 Gas Corp. *Id.* at ¶¶ 44-46. Plaintiff alleges that Defendants paid him in this manner to avoid paying him overtime wages. *Id.* at ¶ 45. Demirtas alleges that Defendants did not pay him an overtime premium for any hours worked over 40 per week, did not provide him with a complete and accurate wage notice, and did not provide him with complete and accurate wage statements. *Id.* at ¶¶ 47-51.

---

[1] The Court may rely upon declarations and affidavits submitted in support of Plaintiff's motion for default judgment. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 29 (E.D.N.Y. 2015) ("[A] court may rely on 'detailed affidavits and documentary evidence,' in addition to the plaintiff's complaint, to determine the sufficiency of a default judgment claim.") (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).

[2] Although Plaintiff worked for Defendants until July 1, 2024, he alleges that Defendants remedied any wage violations beginning April 14, 2024. Compl. ¶ 38 n.1. Therefore, he does not seek overtime compensation after April 13, 2024. *Id.*

### B.    Procedural Background

On July 17, 2024, Plaintiff commenced this action, alleging causes of action for: (1) failure to pay overtime wages under the FLSA; (2) failure to pay overtime wages under the NYLL; (3) failure to provide a wage notice under the NYLL; and (4) failure to provide any wage statements under the NYLL.  DE [1].  Demirtas served the Summons and Complaint on Yakobowicz and 849 Gas on July 29, 2024 and August 1, 2024, respectively.  *See* DE [5], [6].  Neither Defendant responded to Plaintiff's Complaint and the time to do so has expired.

On September 12, 2024, Plaintiff requested that the Clerk of the Court enter a Certificate of Default against Defendants.  DE [7].  On September 16, 2024, the Clerk of the Court entered a Certificate of Default and Demirtas filed the instant motion for a default judgment, which Judge Morrison referred to this Court for a Report and Recommendation.  DE [8], [9].  For the reasons set forth herein, the Court respectfully recommends that Plaintiff's motion for default judgment be granted and that judgment be entered against Defendants, jointly and severally, in the amount of $24,993.48, with prejudgment interest accruing at a rate of $1.77 per day until judgment is entered, and that post-judgment interest be awarded based upon the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of the judgment.

## II.    LEGAL STANDARD

Motions for default judgment are governed by Fed. R. Civ. P. 55, which provides for a two-step process.  *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011).  Initially, the moving party must obtain a

certificate of default from the Clerk of the Court. *See* Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. *Id.* at 55(b). Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true. *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.").

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Ferrera v. Tire Shop Ctr.*, No. 14-CV-4657(FB)(LB), 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015) (Report and Recommendation), *adopted by* 2015 WL 3604078 (E.D.N.Y. June 5, 2015) (internal quotation marks and citation omitted). Accordingly, prior to entering a default judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of law." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). Once liability has been established, "[t]he court must also determine the amount of damages, actual or statutory, that may be assessed." *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010).

## III.    DISCUSSION

Plaintiff seeks a default judgment in the amount of $24,813.78 against Defendants, jointly and severally, for his claims for: (1) unpaid overtime wages under the FLSA and NYLL; and (2) failure to provide a wage notice or any wage statements in violation the NYLL.  *See* Memorandum of Law in Support of Plaintiff's Motion for Default Judgment ("Pl.'s Mem."), DE [9-1], at 7-15; Estimated Calculation of Damages, DE [9-7].  For the reasons set forth herein, the Court respectfully recommends that Defendants be found liable for their violations of the FLSA and NYLL and that judgment be entered against them in the amount of $24,993.48.

### A.    Liability Under the FLSA

To prevail on a claim under the FLSA, the plaintiff must establish that:  "(1) the Defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the Plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Rodriguez v. Ridge Pizza Inc.*, No. 16-CV-254(DRH)(AKT), 2018 WL 1335358, at *5 (E.D.N.Y. Mar. 15, 2018) (quoting *Garcia v. Badyna*, No. 13-CV-4021(RRM)(CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sep. 23, 2014)); *see* 29 U.S.C. § 207; *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120(JG), 2013 WL 3010810, at *11 (E.D.N.Y. June 18, 2013) (describing standard for liability under the FLSA).  The plaintiff also "must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy v. Catholic Health Sys. Of*

6

*Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)(1)). Plaintiff's allegations, accepted as true, satisfy these requirements.

### 1.    Interstate Commerce

An "enterprise engaged in commerce or in the production of goods for commerce" is an entity "whose annual gross volume of sales made or business done is not less than $500,000" and that has employees "engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1); *see Valdez v. H&S Rest. Operations, Inc.*, No. 14-CV-4701(SLT)(MDG), 2016 WL 3079028, at *2 (E.D.N.Y. Mar. 29, 2016) (Report and Recommendation), *adopted by* 2016 WL 3087053 (E.D.N.Y. May 27, 2016) (describing the FLSA's interstate commerce requirement); 29 C.F.R. § 779.103 (defining "employees engaged in commerce").

Plaintiff alleges that, at all relevant times, 846 Gas had employees, including himself, who handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce. Compl. ¶ 14. Demirtas further alleges that 846 Gas's annual gross volume of sales exceeded $500,000 for each applicable year of his employment. *Id.* at ¶ 15. Although "allegations detailing statutory definitions without providing additional facts may not be sufficient to infer a nexus to interstate commerce," due to Defendants' default, "the Court may accept these uncontested allegations as true and make reasonable inferences." *Singh v. Meadow Hill Mobile Inc.*, No. 20 Civ. 3853(CS)(AEK), 2021 WL 4312673, at *4 (S.D.N.Y. Aug.

9, 2021) (Report and Recommendation), *adopted by* 2021 WL 3862665 (S.D.N.Y. Aug. 29, 2021).  To that end, courts in this Circuit have observed that "it is reasonable to infer that a gas station minimart has employees handling or selling goods that have been moved or produced in interstate commerce." *Id.*; *see Kotuwage v. NSS Petroleum Inc.*, No. 15-CV-4374(FB)(ST), 2018 WL 1189332, at *5 (E.D.N.Y. Feb. 8, 2018) (holding that an employer was covered under the FLSA "based on the allegations in the Complaint that [the defendant] was a gas station that sold goods that had moved in interstate commerce") (Report and Recommendation), *adopted by* 2018 WL 1187397 (E.D.N.Y. Mar. 7, 2018).

Accordingly, Plaintiff's allegations, accepted as true, satisfy the FLSA's interstate commerce requirement.  *See Singh*, 2021 WL 3862665, at *4; *Valdez*, 2016 WL 3079028, at *3.

### 2.    Employer-Employee Relationship

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d).  In evaluating whether someone is an "employer" under the FLSA, the Second Circuit utilizes the economic realities test, which focuses on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013) (quoting *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)).  The analysis turns on

whether the defendant had "operational control" over employees. *Irizarry*, 722 F.3d at 110.

Plaintiff alleges that 846 Gas "maintained control, oversight, and direction over [himself], including timekeeping, payroll, and other employment practices." Compl. ¶ 16. Demirtas further alleges that Yakobowicz was an owner, officer, director, shareholder, and/or managing agent of 846 Gas. *Id.* at ¶ 19. Yakobowicz participated in running the daily operations of 846 Gas, participated in the management and supervision of Plaintiff and his work for 846 Gas, and exercised substantial operational control over 846 Gas and Plaintiff. *Id.* at ¶¶ 20-22. Yakobowicz participated in the decision to hire Plaintiff, had control over Plaintiff's job duties, determined Plaintiff's compensation, and participated in decisions regarding the manner and amount that Defendants paid Plaintiff. *Id.* at ¶¶ 24-30. These allegations, accepted as true, establish that both 846 Gas and Yakobowicz were Plaintiff's employers under the FLSA. *See Valdez*, 2016 WL 3079028, at *3; *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914(ENV)(MMH), 2023 WL 6338666, at *6 (E.D.N.Y. Sept. 29, 2023) ("With respect to an individual defendant, the underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees . . . .") (internal quotation omitted).

3.    Failure to Pay Overtime Wages Under the FLSA

The FLSA requires that covered employers pay any employee who works more than 40 hours per week a premium for overtime hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

Plaintiff alleges that, from October 16, 2023 until April 13, 2024, he worked a total of 72 hours per week. Compl. ¶¶ 41-43. Demirtas further alleges that Defendants paid him "straight-time" for all hours worked, and that he did not receive overtime premium pay for hours he worked over 40 during this period. *Id.* at ¶¶ 46-47. These allegations, accepted as true, establish that Defendants violated the FLSA's overtime pay requirement. *Valdez*, 2016 WL 3079028, at *3; *see Pavia v. Around the Clock Grocery, Inc.*, No. 03-CV-6465(ERK)(CLP), 2005 WL 4655383, at *5 (E.D.N.Y. Nov. 15, 2005) ("[W]here the employer has defaulted, the courts have held that the plaintiff's recollection and estimates of hours worked are presumed to be correct.") (internal quotation and alteration omitted). Accordingly, having determined that Defendants are Plaintiff's employers and subject to the FLSA, the Court respectfully recommends that a default judgment be entered against them for their failure to pay overtime wages in accordance with the FLSA.

### B.    Liability Under the NYLL

Plaintiff also seeks a default judgment for his claims arising under the NYLL for failure to pay overtime wages, failure to provide a wage notice, and failure to provide wage statements. Compl. ¶¶ 67-83; Pl.'s Mem. at 12-15. For the reasons set forth below, the Court also respectfully recommends that default judgment be entered with respect to these claims.

#### 1.    Failure to Pay Overtime Wages Under the NYLL

"The New York Labor Law 'is the state analogue to the federal FLSA.'" *D'Arpa*, 2013 WL 3010810, at *18 (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 292

(E.D.N.Y. 2011)).  Although the NYLL "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of annual sales," it otherwise mirrors the FLSA regarding payment of overtime wages. *Chen Jie Yin v. Kim*, No. 07-CV-1236(DLI)(JO), 2008 WL 906736, at *4 (E.D.N.Y. Apr. 1, 2008); *see* N.Y. Comp. Codes. R. & Regs. tit. 12, § 142-2.2 (employing the same method as the FLSA for calculating overtime wages).  Like the FLSA, overtime compensation under the NYLL is 1.5 times the regular rate of pay for each hour worked over 40 hours per week.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (observing that the NYLL adopts the FLSA's definition of overtime); *Chen Jie Yin*, 2008 WL 906736, at *4 ("New York mandates that employers provide time-and-a-half compensation for their employees' work hours that exceed 40 hours per week.").

Courts have observed that, a finding of liability for failure to pay overtime wages under the FLSA is sufficient to find liability for failure to pay overtime wages under the NYLL.  *See, e.g.*, *Rodriguez v. Franco Realty Assocs., LLC*, No. 22-CV-6380(JPO), 2023 WL 8762994, at *3 (S.D.N.Y. Dec. 13, 2023) ("[F]or the same reasons that Defendants are liable for the overtime wages violations under the FLSA, Defendants are also liable under the NYLL."); *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623(NGG)(PK), 2023 WL 2583856, at *13 (E.D.N.Y. Mar. 21, 2023) ("The NYLL applies the same standard as the FLSA for overtime claims.").  Accordingly, the Court respectfully recommends that default judgment be entered against Defendants for their failure to pay overtime wages in accordance with the NYLL.

2.   <u>Failure to Provide Wage Notice and Wage Statements</u>

Plaintiff also seeks default judgment for Defendants' alleged failure to provide a wage notice pursuant to N.Y. Lab. Law § 195(1) and any wage statements pursuant to N.Y. Lab. Law § 195(3).  Compl. ¶¶ 76-82; Pl.'s Mem. at 14-15.  Section 195(1) of the NYLL requires that employers provide employees a wage notice at the time of hiring containing, among other things, the rate of pay, the basis thereof, and the pay schedule.  N.Y. Lab. Law § 195(1)(a).  Section 195(3) of the NYLL requires that employers provide employees with "a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details." *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (internal quotation omitted).

Plaintiff alleges that Defendants did not provide him with a wage notice as required by N.Y. Lab. Law § 195(1) or any wage statements as required by N.Y. Lab. Law § 195(3).  Compl. ¶¶ 80-83.  He does not allege that he suffered monetary harm, however, and courts in the Second Circuit are split regarding what is required to establish Article III standing as necessary to proceed in federal court on these claims. To that end, a recent line of cases have held that purely technical violations of N.Y. Lab. Law §§ 195(1) and 195(3), without allegations of actual harm, are insufficient to confer Article III standing.  *See, e.g., Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024) ("[W]e agree with those district courts that have held that a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm."); *Lock v. Costco Wholesale Corp.*, No. 23-CV-7904(NJC)(ST),

2024 WL 4728594, at *5 (E.D.N.Y. Nov. 8, 2024) (dismissing claim arising under N.Y. Lab. Law § 195(3) where the plaintiff did not allege any actual injury arising out of the failure to provide a wage statement); *Cao v. Wedding in Paris LLC*, No. 20-CV-2336(RJK)(JAM), 2024 WL 1518847, at *24 (E.D.N.Y. Mar. 29, 2024) ("Absent any factual allegations of a concrete injury fairly traceable to Defaulting Defendants' failure to provide wage notices or wage statements, Plaintiffs' claims . . . do not demonstrate Article III standing.").

Other courts have held that Article III standing exists where the failure to provide a wage notice or wage statement affected the plaintiff's ability to advocate for the receipt of proper pay or to seek legal recourse. *See, e.g.*, *Abe v. Yamaguchi & Friends, Inc.*, No. 22-CV-3164(NRM)(ARL), 2024 WL 3875779, at *10 (E.D.N.Y. Aug. 20, 2024) (holding that allegations of wage notice and wage statement violations, when considered in conjunction with the plaintiff's allegations that the defendant failed to pay her the requisite minimum wage, were sufficient to establish Article III standing); *Veloz v. MM Custom House Inc.*, No. 19-CV-852(DLI)(JRC), 2024 WL 1282698, at *6 (E.D.N.Y. Mar. 26, 2024) (holding that the plaintiff demonstrated Article III standing "because wage notices and wage statements are necessary to empower employees to understand and advocate for their rights, and the deprivation of that information can impinge on an employee's interest not only in being paid what is owed, but also in being able to advocate for the receipt of proper pay") (internal quotation omitted); *Isayeva v. Diamond Braces*, No. 22 Civ. 4575(KPF), 2024 WL 1053349, at *17 (S.D.N.Y. Mar. 11, 2024) (finding actual harm for purposes of Article

13

III standing where the deprivation of notice affected the plaintiffs' ability "to discover their underpayment and advocate for themselves").

Although Demirtas does not allege that he suffered monetary harm because of Defendants' violations of N.Y. Lab. Law §§ 195(1) and 195(3), he alleges that, had he received the requisite wage notice and wage statements in a timely fashion, he "would have had a better understanding of how [he] was paid each week, and [he] could have sought legal counsel and brought this lawsuit earlier." *See* Demirtas Decl. ¶ 27.  He further alleges that Defendants actually failed to pay him overtime wages and attempted to conceal their conduct by paying him via checks issued by two separate companies.  Compl. ¶¶ 45-52.  Taken together, these allegations are sufficient to demonstrate Article III standing and to establish violations of N.Y. Lab. Law §§ 195(1) and 195(3).  *See Abe*, 2024 WL 3875779, at *10; *Veloz*, 2024 WL 1282698, at *6; *Isayeva*, 2024 WL 1053349, at *17.  Accordingly, the Court respectfully recommends that Plaintiff's motion for default judgment be granted with respect to his claims arising under N.Y. Lab. Law §§ 195(1) and 195(3).

### C.  <u>Damages</u>

Having determined Defendants' liability, "[t]he court must also determine the amount of damages, actual or statutory, that may be assessed." *Lyons P'ship, L.P.*, 702 F. Supp. 2d at 111.  The Second Circuit allows for "an inquest by affidavit, without an in-person court hearing, 'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'" *All-Star Mktg. Group, LLC v. Media Brands Co., Ltd.*, 775 F. Supp. 2d 613, 619 (S.D.N.Y. 2011) (quoting

14

*Transatlantic Marine Claims Agency, Inc.*, 109 F.3d at 111).  It is well established that "the moving party bears the burden of proving a reasonable basis for determination of damages and should not be awarded damages if the evidence is not adequate."  *In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1160 (E.D.N.Y. 1995).

Plaintiff seeks $24,813.78 in damages, including: (1) $7,210.00 in unpaid overtime wages; (2) $7,210.00 in liquidated damages; (3) a total of $10,000.00 in statutory damages pursuant to N.Y. Lab. Law §§ 195(1) and 195(3); (4) $393.78 in pre-judgment interest,[3] as well as $1.77 per day through the date of judgment; and (5) post-judgment interest.  *See* Pl.'s Mem. at 12-20; Estimated Calculation of Damages.  Having determined Defendants' liability as described above, the Court respectfully recommends that Plaintiff be awarded $24,993.48 in damages.

### 1.    Unpaid Overtime Wages

The measure of damages in an FLSA or NYLL case is the amount the plaintiff should have been paid minus the amount the plaintiff was actually paid.  *Zabrodin v. Silk 222, Inc.*, 702 F. Supp. 3d 102, 122 (E.D.N.Y. 2023) (citing *Ramos v. Guaba Deli Grocery Corp.*, No. 20-CV-4904(PAE)(JLC), 2021 WL 5563714, at *9 (S.D.N.Y. Nov. 28, 2021)); *Jimenez v. Green Olive, Inc.*, No. 23-CV-8805(AMD)(JAM), 2024 WL 3763467, at *19 (E.D.N.Y. Aug. 13, 2024) ("The amount of unpaid overtime wages is calculated by subtracting the amount Plaintiff was actually paid from the amount that he should have been paid under the FLSA and NYLL.").  A plaintiff may not recover double damages for the same injury under both the FLSA and NYLL, but the

---

[3] This amount reflects the damages Plaintiff alleged upon filing his motion.  The Court's analysis accounts for additional pre-judgment interest that has accrued since then.

plaintiff is entitled to relief under whichever statute provides for greater damages. *Ventura v. Putnam Gardens Parking Corp.*, No. 20-CV-119(JKG)(VF), 2023 WL 3603589, at *3 (S.D.N.Y. Mar. 20, 2023) (Report and Recommendation), *adopted by* 2023 WL 3601649 (S.D.N.Y. May 23, 2023).    Therefore, damages for overtime violations under the FLSA and NYLL are analyzed the same but awarded only once. *Calle v. Pizza Palace Café LLC*, No. 20-CV-4178(LDH)(LB), 2022 WL 609142, at *7 (E.D.N.Y. Jan. 4, 2022) (observing that a plaintiff may not recover unpaid wages under both the FLSA and NYLL, but that the "plaintiff will recover the same amount under the FLSA and NYLL here").

An award of damages may be "based on the plaintiff's recollection and estimate of hours worked, which are presumed to be correct as a result of the defendant's default." *Jimenez*, 2024 WL 3763467, at *18; *see Lopez v. Royal Thai Plus, LLC*, No. 16-CV-4028(NGG)(SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (holding that a plaintiff "need not compute FLSA damages with precision") (Report and Recommendation), *adopted by* 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).    In cases like this action, courts calculate damages under the NYLL, which provides for the greatest recovery.    *Jimenez*, 2024 WL 3763467, at *18 (citing *Diaz v. Rene French Cleaners, Inc.*, No. 20-CV-3848(RRM)(RER), 2022 WL 4646866, at *6 (E.D.N.Y. Aug. 29, 2022)).

From October 16, 2023 to December 31, 2023, Defendants paid Plaintiff an hourly rate of $17.00, meaning his hourly overtime rate of pay would have been $25.50, for a deficiency of $8.50 for each overtime hour he worked.    Demirtas Decl. ¶

23.  Demirtas worked 20 overtime hours during his first week of employment and 32 overtime hours per week for the following 10 weeks, until December 31, 2023.  *Id.* This amounts to $2,890.00 in unpaid overtime wages for this period.  From January 1, 2024 to April 13, 2024, Defendants paid Plaintiff an hourly rate of $18.00, meaning his hourly overtime rate of pay would have been $27.00, for a deficiency of $9.00 for each overtime hour he worked.  *Id.* at ¶ 24.  Plaintiff worked 32 overtime hours per week for the entirety of this 15-week period.  Compl. ¶¶ 43-48.  This amounts to $4,320.00 in unpaid overtime wages for this period.

Accordingly, for these two periods, the Court respectfully recommends that judgment be entered against Defendants, jointly and severally, in the total amount of $7,210.00 for unpaid overtime wages.  *See Quito v. KW NY Constr. Inc.*, No. 22-CV-8417(NSR), 2024 WL 2274392, at *3 (S.D.N.Y. May 20, 2024) (entering a default judgment jointly and severally against an entity and individual defendant); *Hernandez v. Quality Blacktop Servs., Inc.*, No. 18-CV-4862(RJD)(RML), 2021 WL 1207316, at *12 (E.D.N.Y. Mar. 30, 2021) (recommending joint and several liability against a corporation and individual defendant upon a finding of liability).

2.  Liquidated Damages

Plaintiff further seeks to recover liquidated damages under the NYLL.  Pl.'s Mem. at 18.  The NYLL "allows a plaintiff 'to receive liquidated damages equal to one hundred percent of the total amount of the wages found to be due, unless the employer provides a good faith basis for believing he or she was in compliance with the law.'" *Reyes-Fana v. Moca Grocery NY Corp.*, No. 21-CV-4493(AMD)(RER), 2022 WL

17

5428688, at *12 (E.D.N.Y. Aug. 16, 2022) (quoting *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997(DLI)(CLP), 2017 WL 5033650, at *23 (E.D.N.Y. Sept. 22, 2017)); *see* N.Y. Lab. Law §§ 198(1)(a), 663(1).

Here, Defendants' default alone demonstrates a lack of good faith and that liquidated damages are therefore appropriate. *See Valdez*, 2016 WL 3079028, at *6 ("As the defendants here have defaulted, they have not shown they acted in good faith."); *Guaman v. Krill Contracting, Inc.*, No. 14-CV-4242(FB)(RER), 2015 WL 3620364, at *10 (E.D.N.Y. June 9, 2015) ("[I]n light of the default, there has also been no showing that the Defaulting Defendants acted in good faith or that the Court should decline exercising its discretion in granting liquidated damages."). Accordingly, having recommended that Plaintiff be awarded $7,210.00 for unpaid overtime wages, the Court respectfully recommends that he also be awarded $7,210.00 in liquidated damages pursuant to the NYLL.

### 3.   Wage Notice and Wage Statement Damages

Plaintiff seeks to recover $5,000.00 for Defendants' wage notice violation pursuant to N.Y. Lab. Law § 195(1) and $5,000.00 for Defendants' wage statement violations pursuant to N.Y. Lab. Law § 195(3). *See* Pl.'s Mem. at 14-15. Section 195(1) provides for an award of $50 per day of the violation, with a statutory maximum award of $5,000, and Section 195(3) provides for an award of $250 per day of the violation, with a statutory maximum award of $5,000. *See* N.Y. Lab. Law § 198(1-b), (1-d).

Plaintiff worked for Defendants for more than 100 days, from October 16, 2023 until July 1, 2024, resulting in the statutory maximum penalty.[4]  Compl. ¶ 38.  At no point during this period did Defendants provide Demirtas with the NYLL's required wage notice or wage statements.  *Id.*  Having concluded that Defendants are liable under N.Y. Lab. Law §§ 195(1) and 195(3), and that the duration of their violations results in an award of the statutory maximum penalty, the Court respectfully recommends that Plaintiff be awarded a total of $10,000.00 for Defendants' violations of N.Y. Lab. Law §§ 195(1) and 195(3).

### 4.   Pre-Judgment Interest

Plaintiff also seeks an award of prejudgment interest.  *See* Pl.'s Mem. at 18-20.  Although the FLSA does not allow for recovery of both liquidated damages and pre-judgment interest, *see Santillan*, 822 F. Supp. 2d at 298, the NYLL does.  *Solis v. Tropical Rest. Bar Inc.*, No. 23-CV-1707(ENV)(MMH), 2024 WL 4271234, at *16 (E.D.N.Y. Sept. 19, 2024) ("[T]he NYLL enables a plaintiff to recover both liquidated damages and prejudgment interest.").  The NYLL provides for prejudgment interest at a rate of 9% per year.  N.Y. C.P.L.R. 5001, 5004; *see Fermin*, 93 F. Supp. 3d at 48 (awarding pre-judgment interest under the NYLL and observing that interest "shall be at the rate of nine *per centum per annum*").  Interest is computed "from the earliest ascertainable date the cause of action existed."  N.Y. C.P.L.R. 5001(b).  Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . .

---

[4] Even accepting April 13, 2024 – the date on which Plaintiff alleges that Defendants cured their overtime pay violations – as the end date of any statutory violation, the number of days still exceeds 100, thereby entitling Plaintiff to the maximum statutory recovery under both N.Y. Lab. Law §§ 195(1) and 195(3).

from a single reasonable intermediate date." *Id.* Courts in this Circuit have found that a single reasonable intermediate date is the median date between the earliest and latest dates within the statute of limitations period that a plaintiff's wage claim accrued. *See Hernandez v. NJK Contractors, Inc.*, No. 09-CV-4812(RER), 2015 WL 1966355, at *1 (E.D.N.Y. May 1, 2015); *Coulibaly v. Millennium Super Car Wash, Inc.*, No. 12-CV-4760(CBA)(CLP), 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013) (using the midpoint of the plaintiff's overtime claims to calculate prejudgment interest).

Applying the statutory rate of 9% per year to Plaintiff's $7,210.00 in unpaid overtime wages, pre-judgment interest accrues at a rate of $1.77 per day.[5] As the alleged wage violations began on October 16, 2023 and ended on April 13, 2024, the Court considers January 13, 2024 an appropriate midpoint for purposes of determining pre-judgment interest. As 324 days have lapsed between January 13, 2024 and the date of this Report and Recommendation, the Court respectfully recommends that Plaintiff be granted $573.48 in pre-judgment interest, accruing at a rate of $1.77 per day until final judgment is entered.

### 5.    Post-Judgment Interest

Pursuant to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant

---

[5] Pre-judgment interest only accrues with respect to unpaid wages, and not on liquidated or statutory damages. *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 380 (E.D.N.Y. 2022) ("Prejudgment interest is calculated on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law.") (internal quotation omitted).

maturity Treasury yield . . . for the calendar week preceding the date of the judgment." An award of post-judgment interest at the statutorily prescribed rate is mandatory. *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2001). Therefore, the Court respectfully recommends that Plaintiff be awarded post-judgment interest calculated from the date on which judgment is entered until the date on which judgment is paid, using the federal rate set forth in 28 U.S.C. § 1961.

## IV.    CONCLUSION

For the reasons set forth herein, the Court respectfully recommends that Plaintiff's motion for a default judgment be granted, and that judgment be entered against Defendants, jointly and severally, in the amount of $24,993.48, that pre-judgment interest accrue at a rate of $1.77 per day until the date on which judgment is entered, and that Plaintiff be awarded post-judgment interest using the federal rate set forth in 28 U.S.C. § 1961.[6]

## V.    OBJECTIONS

A copy of this Report and Recommendation is being served on Plaintiff by electronic filing on the date below. Plaintiff is directed to serve a copy of it on Defendant via first-class mail and promptly file proof of service by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal

---

[6] Although the Prayer for Relief in the Complaint and Plaintiff's Estimated Calculation of Damages reference an award of attorneys' fees and costs, *see generally* Compl., his motion for default judgment neither seeks an award of attorneys' fees nor provides substantiation for any such award.

the District Court's Order.  *See Ferrer v. Woliver*, No. 05-CV-3696, 2008 WL 4951035,

at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997);

*Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:    Central Islip, New York
          December 2, 2024

                                        /s/ Steven I. Locke
                                        STEVEN I. LOCKE
                                        United States Magistrate Judge